**Regine THEVENIN, Plaintiff,**

v.

**BAPTIST HEALTH SYSTEMS OF SOUTH FLORIDA, INC., a Florida corporation, and Baptist Hospital of Miami, Inc., a Florida corporation, Defendants.**

No. 95–1672–CIV–KING.

United States District Court,
S.D. Florida.

July 8, 1996.

Alexander O. Akpodiete, Miami, FL, for Plaintiff.

Glenn Rissman, Miami, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment, filed June 11, 1996. Plaintiff filed a response on June 24, 1996. The motion was argued orally at the Pretrial Conference, held June 28, 1996.

### I. Factual Background

Plaintiff, an African American woman, worked for Defendants hospital and its parent company as a Registered Nurse ("RN") from December 12, 1993 to January 8, 1995. (Compl. ¶ 9.) The gravamen of her Complaint is that she was "constantly subjected to racial abuse and hostile working environment by Ms. Diane Ash," her shift supervisor. (Compl. ¶ 10.) Plaintiff was allegedly "harassed and subjected to different terms and conditions of employment," and allegedly experienced "other instances of racial abuse and discrimination, including statements and innuendos." (Compl. ¶¶ 10–11.)

On October 25, 1994, Defendants notified Plaintiff by memorandum that five RN positions in the hospital's Rehabilitation Unit were to be eliminated, including her position. The parties dispute Defendants' actions and intent in eliminating the five RN positions. After Plaintiff filed a detailed written protest, Defendants advised Plaintiff by letter that Ms. Ash and the hospital vice-president "will help you in any way that we can to assist you in locating another position [within the hospital]." (Pl.Resp.Exs. "B", "C"). Plaintiff attributes the severed relationship to constructive discharge, while Defendants maintain that Plaintiff voluntarily resigned her position.

Plaintiff alleges that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Count I); the Florida Civil Rights Act of 1992, Fla.Stat. 760.10 (Count II); and Metropolitan Dade County Code § 11A–3(9).

## II. Legal Standard

Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court must view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exits. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the Court should refuse to grant summary judgment. *Hairston*, 9 F.3d at 919. However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

## III. Analysis

■ Defendants argue that Plaintiff has failed to establish a *prima facie* case of racial discrimination. In order to do so, Plaintiff must prove that 1) she is a member of the protected class; 2) she is qualified for the position; 3) she suffered an adverse employment action; and 4) she was replaced by someone outside the protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973); *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir.1989). Defendants contend that Plaintiff has not met the third and fourth prongs of the *McDonnell Douglas* test.

■ Plaintiff argues that she suffered an adverse employment decision by virtue of being constructively discharged. A claim for constructive discharge requires a showing that "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1363 (11th Cir.1994). Plaintiff relies on extrajurisdictional authority for the proposition that the "deliberateness" of the employer's actions must be considered. *See, e.g., Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir.1995).

■ Under Eleventh Circuit precedent, the deliberateness of Defendant's actions is not an issue. *See Virgo*, 30 F.3d at 1363. Plaintiff charges that her conditions were intolerable not because of racial animus, but because her work schedule would have changed despite her reliance on working the 3:00 p.m. to 11:00 p.m. shift. (Pl.Resp. at 7.) According to Plaintiff, that shift "was the most favorable time she could work due to other important responsibilities." (Pl.Resp. at 7.) Because "her time constraints made it quite impossible to work any other time on a permanent basis, [t]he situation became intolerable and it was easier to resign and seek re-employment elsewhere." (Pl.Resp. at 7–8.)

Defendants have met their burden of pointing to the absence of a disputed issue of material fact as to the third element of the *McDonnell Douglas* test. There is no showing in this record that Plaintiff suffered an adverse action. The burden then shifts to Plaintiff to show that such a dispute indeed exists. *Hairston*, 9 F.3d at 918. In other words, Plaintiff must show that a question of fact remains as to whether she was constructively discharged.

The Court concludes that Plaintiff has failed to meet this burden with any evidence that a reasonable person would have resigned because of intolerable working conditions. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The Court has carefully reviewed the record in an unsuccessful attempt to find evidence of racial animus or a hostile working environment supporting Plaintiff's claim. Most telling is Plaintiff's own deposition, at which she claimed that she went to

the Equal Employment Opportunity Commission ("EEOC") because "Ms. Ash had discriminated against me." (Thevenin Dep. at 137.) When pressed by defense counsel for elaboration, Plaintiff reiterated that "[her] position was given to someone that has been there less time than [she had] and who has less experience than [she had]." (Thevenin Dep. at 137.)

Later in her deposition, counsel asked Plaintiff to confirm her contention that Ms. Ash made racial comments in front of other African American staff, specifically an RN named Joselyn Sainvil. (Thevenin Dep. at 155.) Aside from that allegedly derogatory remark, Plaintiff was unable to cite any specific instances of discrimination. Significantly, she was unaware of the substance of Ms. Ash's purported remark, except to concede that it was not a "racial slur":

Q: ... Did you hear Ms. Ash make racial comments?

A: No, I didn't hear her.

Q: What racial comments did Ms. Ash make in front of other black staff?

A: I don't remember that....

Q: Do you remember which black staff Ms. Ash allegedly made these racial comments in front of?

A: As I stated, Ms. Joselyn [Sainvil]....

Q: She's the only employee who Ms. Ash made racial statements in front of?

A: That I know of, yes....

Q: You had no recollection of what the comment was?

A: No....

Q: Do you have any sense or feeling for what Ms. Ash said in front of Ms. Sainvil?

A: I remember the occasion being Halloween.

Q: Was it was racial slur?

A: No. No.

Q: It wasn't a racial slur?

A: No, unt-uh.

(Thevenin Dep. at 155–57).

Defense counsel subsequently questioned Plaintiff about her more generalized allegations that she "was constantly subjected to racial abuse and hostile working environment by Ms. Diane Ash." (Compl. ¶ 10.) In her

charge of discrimination filed with the EEOC, Plaintiff averred that "Ms. Ash is a dictator, who displays no tact. She lies. She has a bad attitude with staff. She treats staff badly. I have heard about her fights with other employees. She doesn't interact well with patients or doctors who also complain about her." (Pl.Resp.Ex. "D"). Plaintiff's deposition testimony is no more probative as to whether Ms. Ash discriminated against Plaintiff on the basis of race. From Plaintiff's testimony, the Court can glean that both African American and white nurses felt Ms. Ash was "unapproachable," and that Ms. Ash "screams and raves" at members of both races. (Thevenin Dep. at 158, 162–63).

The record suggests that Ms. Ash's behavior toward her subordinates may be offensive and unpleasant, and rapport nonexistent. (*See* Odom Dep. at 48–51.) Nonetheless, Plaintiff has failed to show that this behavior is premised on race, such that a reasonable person would have felt compelled to resign. In fact, Plaintiff was offered assistance in finding employment in another part of the hospital, assistance that was admittedly never accepted. (Pl.Resp.Ex. "C"; Thevenin Dep. at 173.) The reasons articulated by Plaintiff in her deposition and by counsel at oral argument are unrelated to race, but rather stem from Plaintiff's desire to remain in the Rehabilitation Unit on a particular shift. (Pl.Resp. at 7–8.) As such, Plaintiff has failed to prove that she suffered an adverse employment decision at the hands of Defendants.

■ Plaintiff's alternative reliance on the "reduction-in-force" version of the *McDonnell Douglas* test is similarly unavailing. A plaintiff in a reduction-in-force case establishes a *prima facie* case by showing that 1) she is a member of a protected class and was adversely affected by an employment decision; 2) she was either qualified for her former position or for another position at the time of her termination; and 3) there is evidence from which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of race in reaching the decision. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045–46

(11th Cir.1989). Having earlier determined that Plaintiff failed to establish that she suffered an adverse employment decision, the Court concludes that Plaintiff has likewise failed to establish a *prima facie* case of discrimination in the context of a reduction-in-force.

### IV. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motion for Summary Judgment be, and the same is hereby, GRANTED.

DONE and ORDERED.